**Appeal of JOSEPH EMSHEIMER IN-      Docket No. 1036.
SURANCE AGENCY.**

The taxpayer operates a general insurance agency. A large part of its income for 1919 and 1920 consisted of commissions received by it upon policies written by subagents. Stockholders owning 48 per cent of the shares of capital stock were not regularly engaged in the active conduct of the business. Evidence *held* not to warrant classification as a personal service corporation for 1919 and 1920.

Submitted February 15, 1925; decided February 28, 1925.

*J. Robert Sherrod* and *Harry Friedman, Esqs.*, for the taxpayer.
*E. C. Lake, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

This is an appeal from the action of the Commissioner in denying the taxpayer a personal service classification for the years 1919 and 1920. From the oral and documentary evidence the Board makes the following

FINDINGS OF FACT.

1. The taxpayer was incorporated under the laws of the state of West Virginia June 3, 1911.

2. During the years 1919 and 1920 the taxpayer represented ten insurance companies as local agent in the city of Wheeling, West Virginia, soliciting various kinds of insurance, for which it was paid an average commission of from 20 to 30 per cent of the premiums collected.

3. During the same years the taxpayer also represented two insurance companies as general agent for the district, including Wheeling and certain contiguous parts of West Virginia, Ohio, and Pennsylvania. As such agent it did not represent the insured but represented the two insurance companies, and the services it rendered were of a dual nature: (a) As general agent it appointed or recommended for appointment throughout the said district certain local agents and the officers of the taxpayer visited such local agents at frequent intervals in the interests of the companies by which they were employed, and (b) the other duty performed as general agent for its principals consisted of passing upon the desirability of the risk before the policy was forwarded to the insurance companies. The local agents were required to report all business written for these two insurance companies through the office of the taxpayer, so that the latter might pass upon the risk and, if it deemed advisable, reject the same and cancel the policy.

For both the activities mentioned under (a) and (b) above, the taxpayer was allowed a so-called overwriting commission averaging approximately 7 per cent. The local agents were required to remit to their principals through the taxpayer, and the latter deducted its commissions from the premiums and remitted the balance to the companies. The taxpayer guaranteed the collection of the premiums upon the policies written by the local agents. During the years 1919 and 1920 approximately forty local agents were under contract with the taxpayer. The gross income earned by the taxpayer from this source was approximately 35 per cent of the total gross income.

4. The outstanding capital stock of the taxpayer was $25,000, divided into 250 shares, par value of each share $100, all of which was issued for the good will of the agency which had been in existence for many years prior to 1911. During the years 1919 and 1920 the shares of stock of the taxpayer were owned as follows:

| Names. | Shares. |
|---|---|
| Gabe S. Emsheimer | 125 |
| Charles S. Schlesinger | 5 |
| A. W. Emsheimer | 20 |
| Cora S. Emsheimer | 30 |
| Bella E. Schlesinger | 20 |
| Jennie E. Beekman | 30 |
| Hattie E. Levy | 20 |
| Total | 250 |

Gabe S. Emsheimer was president, and Charles S. Schlesinger was secretary and treasurer of the corporation during the years 1919 and 1920, and devoted their entire time to the business of the taxpayer. A. W. Emsheimer had retired from business and received no salary or commissions from the taxpayer during these years. He did, however, devote some time to the soliciting of business for the taxpayer. The last four named stockholders holding 40 per cent of the stock of the corporation were in no sense regularly or actively engaged in the conduct of the corporation's business.

5. The income of the taxpayer for the year 1919 amounted to $36,703.01, of which amount $22,449.28 was from commissions on local business, $13,405.65 from overwriting commissions, and $848.08 from brokers.

6. The taxpayer employed no solicitors in connection with its business as local agent in Wheeling, except one Milton J. Schlesinger, a member of the family who owned no stock. His duties consisted principally of collecting premiums and delivering policies for which he was paid a salary of $1,500 for 1919. He also solicited some insurance business for which he was allowed a commission by the taxpayer of $745.22. The taxpayer received gross income of approximately $1,200 from his activities.

7. The ledger surplus account, balanced as of the beginning and end of each taxable year, was as follows:

| | |
|---|---|
| January 1, 1919 | $5,478.79 |
| December 31, 1919 | 6,779.46 |
| December 31, 1920 | 10,982.63 |

8. The taxpayer was required to render to the insurance companies which it represented as agent a monthly " account-current " schedule or report on premiums written by it. The practice with respect to this business varied, the remittances being made 45, 60, or 90 days after the close of the month in which the premiums were written. At the end of each year, in order to facilitate the preparation of certain reports by the insurance companies, it was customary to remit all premiums written prior to November 1, and it usually became necessary for the taxpayer to borrow amounts estimated at between $1,000 and $1,500 from the bank in order to make such remittances and to enable it to declare the usual semiannual dividend.

The insurance companies extended credit to the insureds in respect to payment of premiums over a period covering 45, 60, and 90 days after the end of the month in which the premiums were written. If the taxpayer extended credit in excess of that allowed by their principals, the insurance companies, and the account later proved uncollectible, the policies would be cancelled " flat " as to that part

of the premium which had been consumed during such 45, 60, or 90 day period, but the taxpayer would stand the loss of the portion of the premium consumed after such period. In exceptional cases a longer credit was granted by the taxpayer to the insured in which to pay the premium charged upon the policy. Losses from bad debts resulting from such transactions were rare. The taxpayer sustained no such losses through business obtained by its subagents since all such agents were bonded.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

SMITH: What constitutes a " personal service corporation " within the meaning of the Revenue Act of 1918 is set forth in section 200 of that act. Two of the requisites of such a corporation are that its income shall be (1) "ascribed primarily to the activities of the principal owners or stockholders," and (2) that such principal owners or stockholders shall be " regularly engaged in the active conduct of the affairs of the corporation."

We are of the opinion that a large part of the income of the taxpayer, in excess of 33⅓ per cent of the total, is not ascribable primarily to the activities of the principal owners or stockholders. The corporation represents two insurance companies as general agent and it receives a commission upon the business written by the subagents. Of course, the officers of the taxpayer performed certain duties in connection with such business but the taxpayer receives a percentage of the total commissions paid by the insurance companies in respect of that business, and the income of the taxpayer from such business is large or small depending upon the activities of the subagents. With respect to such business the income of the taxpayer is ascribable primarily to the activities of the subagents.

It is also to be noted that the holders of 40 per cent of the stock of the taxpayer are clearly not *regularly* engaged in the active conduct of the business, and we are not convinced from the evidence before us that Mr. A. W. Emsheimer, holding 8 per cent of the stock, can be regarded as being *regularly* engaged in the active conduct of the affairs of the taxpayer. Only two of the stockholders, Gabe S. Emsheimer and Charles S. Schlesinger, holding 52 per cent of the stock of the corporation, may be so regarded.

As we have pointed out in the *Appeal of Bryant & Stratton Commercial School, Inc.*, 1 B. T. A. 32, the case of each taxpayer claiming to be a personal service corporation must be decided upon the facts in the particular case. Considering all of the facts before us with respect to the taxpayer's business for 1919 and 1920, we think that the taxpayer does not qualify as a personal service corporation for those years.